### THE ELIZABETH.

(District Court, E. D. New York. May 12, 1902.)

1. COLLISION—STEAM VESSELS CROSSING—VIOLATION OF RULES.

A steam ferryboat, having another steamer on a crossing course on her starboard hand, was in fault for a collision resulting from her attempt to cross the bows of the other vessel, when she had received no answer to her signals for such crossing.

2. SAME — CONTRIBUTORY FAULT OF PRIVILEGED VESSEL — DUTY TO AWAIT ANSWER TO SIGNALS.

A privileged vessel, having given crossing signals to the burdened vessel, is not justified in disregarding the failure of the latter to answer, and in continuing her course and speed, and if she does so is guilty of fault contributory to a collision, although the primary fault was that of the other vessel.

In Admiralty. Suit for collision.

Hyland & Zabriskie, for libelants.

James J. Macklin, for claimant.

THOMAS, District Judge. On April 10, 1901, the libelants' waterboat Croton was passing up the North river on a course which

¶ 1. See Collision, vol. 10, Cent. Dig. § 127.

brought her at some distance off from the ends of the piers on the New York shore. The wind was blowing a gale from the northwest, and the tide was strong ebb. The master of the Croton saw the ferryboat Elizabeth coming across the river from Communipau, bound for her slip at the foot of Liberty street, N. Y., and when in the vicinity of Rector street blew her one whistle. No similar signal having been received, the Croton proceeded, and shortly blew another whistle, which, as her captain claims, was answered only by an alarm whistle from the Elizabeth, and that thereupon the Croton was immediately stopped and reversed. The ferryboat continued on her course without slackening her speed, and came into collision with the Croton, so that the starboard guard of the ferryboat struck the pilot house of the Croton on the port side, causing the injury for which the libel is filed.

Whether the Elizabeth was in the position of an overtaking vessel admits of doubt, but she had the Croton on her starboard hand, and attempted to cross the Croton's bow, and in attempting to do so came in contact with her. The captain of the Elizabeth claims that when the Croton was some 1,500 feet out in the river, and the Elizabeth was a little ahead of the Croton, he gave a signal of two blasts to the Croton, which was shortly followed by another signal of two blasts, neither of which was answered, and that later he blew the danger signals and attempted to go back. The master of the Croton denies hearing the two whistles, but admits that the alarm whistle was blown shortly before the collision.

The evidence is convincing that the Elizabeth did not have room to cross the Croton's bow, and that her attempt so to pass her was plainly negligent.

It is urged in behalf of the claimant that the Croton should have reduced her speed and stopped when she got no answer to the first signal of one whistle, or at least upon receiving the two signals, and that, if she did not hear the two whistles, it was through some error of her lookout.

Here a grave difficulty arises, and for its solution it is necessary to consider the situation as apprehended by the master of the Croton. He considered that the relation of the vessels was such that his duty required him to give a single whistle, thereby demanding that the Elizabeth should pass under the Croton's stern. So clearly did he conceive the necessity for such signal that he repeated it, and, upon receiving an answer to neither single whistle, he continued on his way, and made no attempt to stop until the collision was inevitable. The question then is, should the court disregard the conditions as they appeared to the master of the Croton, and hold that he was under no obligation to give such signals, or, having given them, that he might disregard the fact that the Elizabeth made no reply thereto? If by nice examination of the testimony it might be concluded that the Elizabeth was at the outstart an overtaking vessel, still the fact remains that the master of the Croton did not so regard her, but that he estimated that the two vessels were upon crossing courses, and that he was entitled to such privilege as would come from his being upon the Elizabeth's starboard hand. If, then,

the master of the Croton considered that his signals were necessary to warn the Elizabeth, why did he not stop and come to an understanding with her, when he well knew that such signals were not answered? This raises the plain problem whether the privileged vessel, having given crossing signals to the burdened vessel, may disregard the failure of the latter vessel to answer, and continue upon its course. After careful consideration, it is concluded that a holding that the master of the Croton might neglect the situation as he saw it at the time would be in antagonism to the master's own judgment of the conditions that confronted him, and what was required, and this conclusion would be emphasized, if it might be inferred further that the Elizabeth blew two whistles, and they were, or should have been, heard by the master of the Croton. There can be no doubt that the chief blame for this accident rested with the Elizabeth, but the court is constrained to a second conclusion, based entirely upon the experience, action, and understanding of the master of the Croton, that there was demanded of him steering signals, that the same were not answered, and that he kept his course, disregarding the known failure of the opposing vessel to respond.

Pursuant to these views, the damages and costs must be divided.